IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GERALDINE F., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:18-cv-02545-K-BT |
| | § | |
| ANDREW SAUL, Commissioner of the Social Security Administration, | § § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Geraldine F.[1] filed a civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Commissioner's decision should be AFFIRMED in all respects.

**Background**

Plaintiff alleges that she is disabled due to several physical impairments, including bilateral carpal tunnel syndrome, degenerative disc disease of the cervical spine, arm neuralgia, and a history of both trigger finger release surgery and torn ligament repair in the wrist. Pl.'s Br. 2 (ECF No. 17); Administrative Record 36 (A.R.) (ECF No. 11-1). She alleges disability beginning June 18, 2015.

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

A.R. 36. After her applications for supplemental security income were denied initially, and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). That hearing took place in Dallas, Texas, on June 23, 2017. *Id.* at 31. Plaintiff was represented by counsel at the hearing. *See id.* at 33. At the time of the hearing, Plaintiff was 60 years old. *See id.* at 35. She has a high school education (Pl.'s Br. 1), can communicate in English, and has past work experience as a teacher's aide and a computer lab teacher (A.R. 39).

The ALJ found that Plaintiff was not disabled and, therefore, not entitled to supplemental security income. *Id.* at 19. At step one of the five-step sequential evaluation,[2] the ALJ found Plaintiff had not engaged in substantial gainful activity since June 18, 2015. A.R. 12. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) bilateral carpal/cubital tunnel syndrome with history of trigger finger release; (2) degenerative disc disease of the cervical and

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

lumbar spines; (3) degenerative changes of the hands with osteopenia and history of torn ligament repair; and (4) obesity. *Id.* But, at step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* at 14. At step four, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, except that she can "lift and/or carry as well as push and/or pull 20 pounds occasionally and 10 pounds frequently." *Id.* at 15. Moreover, the ALJ found that Plaintiff can "sit for 6 hours in an 8-hour workday and stand/walk for 6 hours in an 8-hour workday[;] operate hand controls frequently with both upper extremities[;] frequently reach, handle, finger, and feel . . . with the upper extremities; occasionally climb ramps and stairs[; and] frequently balance, stoop, kneel, crouch, and crawl." *Id.* At step five, the ALJ found that Plaintiff could perform her past relevant work as a teacher's aide or computer teacher. *Id.* at 19.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Council denied Plaintiff's request for review. *Id.* at 1. Plaintiff then filed this action in federal district court, arguing that the ALJ erroneously failed to address an occupational therapist's treatment plan and a chiropractor's letter in reaching his RFC assessment and improperly "disagree[d]" with a State Agency Medical Consultant's (SAMC) opinion without crediting any other medical opinion to substitute for it. Pl.'s Br. 1. As a result, Plaintiff argues, the ALJ did not apply the proper legal standards, and the decision cannot be supported by substantial evidence. *Id.* at 8, 14.

3

## Legal Standards

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923 ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'") (quoting *Perez*, 415 F.3d at 461). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392-93 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support his or her decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

**Analysis**

Plaintiff argues: (1) the ALJ erred by failing to address a plan of care by Plaintiff's occupational therapist when evaluating the medical opinion evidence, and the Court cannot "conduct a meaningful review using the substantial-evidence test without knowing what weight, if any, he intended to give to it," Pl.'s Br. 16; (2) the ALJ erred by failing to address a letter from Plaintiff's chiropractor explaining the extent of Plaintiff's upper extremity limitations, *id.* at 18; and (3) the ALJ committed a *Ripley* error by disagreeing with an SAMC's opinion regarding Plaintiff's ability to reach without crediting a contrary medical opinion to support his RFC finding that Plaintiff could frequently reach, *id.* at 20. As a result of these alleged errors, Plaintiff contends that the ALJ applied incorrect legal standards, and the ALJ's decision cannot be supported by substantial evidence. *Id.* at 8, 14.

<u>I. The ALJ did not err in failing to mention the
occupational therapy plan of care or the chiropractor's letter.</u>

It is error if an ALJ fails to address or mention a medical source opinion in the hearing decision. *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017). But only acceptable medical sources can render medical opinions. *Thibodeaux v. Astrue,* 324 F. App'x 440, 445 (5th Cir. 2009) (per curiam); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Acceptable medical sources include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech pathologists. SSR 06-03p. Other medical professionals, such as nurse practitioners, physicians' assistants, chiropractors, and therapists are known as "other sources." *Id.* An ALJ

5

"generally *should* explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*. (emphasis added).

As they are both "other sources," an ALJ is under no obligation to afford any weight to the opinions of therapists and chiropractors. *See Young v. Berryhill*, 689 F. App'x 819, 822 (5th Cir. 2017) (per curiam) (finding that because a chiropractor is not acceptable medical source, ALJ was not required to "determine whether there was good cause to assign [his] opinion little weight"); *Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) (per curiam) ("[T]he ALJ did not err by failing to consider the opinion of a medical source—the chiropractor. As discussed above, a chiropractor is not listed as an acceptable medical source."); *Lanedra M. v. Berryhill*, 2019 WL 571858, at *4 (N.D. Tex. Jan. 18, 2019) ("A physical therapist is not an acceptable medical source and, contrary to Plaintiff's implication, the ALJ was not required to apply the factors set forth in section 404.1527(c). Moreover, [the physical therapist], 'not being an acceptable medical source, cannot render a medical opinion relevant to a Social Security disability appeal.'"), *rec. adopted*, 2019 WL 570876 (N.D. Tex. Feb. 12, 2019); *Matthews v. Colvin*, 2016 WL 8710706, at *4 (N.D. Tex. Feb. 5, 2016), *rec. adopted*, 2016 WL 1054599 (N.D. Tex. Mar. 17, 2016) (finding that ALJ was not required to "afford any weight" to chiropractor's opinion, as he was not acceptable medical source); *Robinson v.*

6

*Colvin*, 2016 WL 446620, at *4 (N.D. Tex. Jan. 6, 2016) ("[D]espite [the plaintiff's] claims the ALJ was not required to afford any weight to [the chiropractor's] assessment."), *rec. adopted*, 2016 WL 427484 (N.D. Tex. Feb. 4, 2016).

It is Plaintiff's position, however, that an ALJ must at least address opinions from other sources if those opinions may have an effect on the outcome of the case. Pl.'s Br. 12, 18 (citing SSR 06-03p). The Court does not agree. *See Black v. Colvin*, 2014 WL 1116682, at *5 (N.D. Tex. Mar. 20, 2014) (noting that SSR 06-03p is "unclear" as to whether an ALJ must consider other medical source opinions and finding its requirements not so "black-and-white" as to mandate that an ALJ consider them). Indeed, case law "indicates an ALJ need not explain in his or her written determination all evidence contained in the record." *Id.* (collecting cases); *see also Porter*, 200 F. App'x at 319 (finding ALJ did not err by failing to consider opinion of a chiropractor because a chiropractor is not an acceptable medical source).

### A. The Chiropractor's Letter

Plaintiff visited the Spine Physicians Institute several times for hand pain evaluation and treatment. A.R. 654-62. She saw at least two different chiropractors there—Drs. Wagle and Bennett. *Id.* at 657-61. In a letter dated October 15, 2015, Dr. Bennett described Plaintiff's hand pain and its accompanying limitations; in particular, Dr. Bennett described decreased range of motion, difficulty opening doors, difficulty turning keys, difficulty with fine motor skills, and difficulty with grasping and pinching. *Id.* at 666. While the hearing decision mentions Dr. Wagle's

opinion and affords it little weight, it does not mention Dr. Bennett's letter. Plaintiff contends the ALJ's failure to mention Dr. Bennett's letter is error because, if credited, it may have had an outcome on the case. Pl.'s Br. 18.

Here, the ALJ did not err with respect to the opinions of Plaintiff's chiropractors. As stated above, the ALJ was not required to mention the letter from Dr. Bennett describing Plaintiff's hand limitations because, as a chiropractor, Dr. Bennett is not an acceptable medical source. Further, it is not accurate to characterize Dr. Bennett's letter as a medical opinion. The letter, addressed "[t]o whom it may concern," appears to seek medical coverage for physiotherapy for Plaintiff, as it states physiotherapy is a medical necessity and provides a rationale for such conclusion. A.R. 666-68. The letter also does not describe work limitations; it describes Plaintiff's pain and symptoms. *Id.* at 666. In any event, while the hearing decision does not explicitly cite Dr. Bennett's letter, it does address an assessment of Plaintiff's work limitations by Dr. Wagle, a chiropractor at Dr. Bennett's practice. *Id.* at 18, 338-41. The ALJ recited the limitations Dr. Wagle attributed to Plaintiff. *Id.* at 18. The ALJ then afforded Dr. Wagle's opinion significant weight in part and limited weight in part. *Id.* The ALJ fully explained his reasons for doing so. *See id.* The ALJ also incorporated at least a portion of Dr. Wagle's opinion in the RFC. *Compare id.* at 15 (limiting plaintiff to sitting, standing, and walking six hours out of an eight-hour workday; finding that she can lift and/or carry and push and/or pull 10 pounds frequently; and finding she can occasionally climb), *with id.* at 340-41 (finding Plaintiff unlimited in her ability to

8

sit, stand, and walk; finding Plaintiff able to lift, push, and pull about 10 pounds; and finding Plaintiff unlimited in her ability to climb).

### B. The Occupational Therapist's Plan of Care

In May 2017, an occupational therapist (OT), Ms. Youngblood, evaluated Plaintiff's upper extremity function and prepared a multipage plan of care. *Id.* at 770-74. Succinctly stated, Ms. Youngblood's plan of care recommended Plaintiff (1) wear wrist braces at night and when performing any activities that exacerbate Plaintiff's symptoms and (2) do hand strengthening exercises at home. *Id.* at 772. Ms. Youngblood encouraged Plaintiff to postpone her next doctor's visit for two weeks to assess the benefit of the home exercise program (HEP) and discontinued occupational therapy. *Id.* Finally, Ms. Youngblood included a functional reporting note that Plaintiff is "impaired, limited, or restricted" in "carrying, moving, and handling objects . . . [a]t least 40 percent but less than 60 percent." *Id.* A hand specialist, Dr. Golden, co-signed the plan of care, agreeing with Ms. Youngblood's conservative approach and the recommendation that there was no need for additional therapy sessions. *Id.* at 770.

Although Plaintiff testified about her wrist braces at the administrative hearing, *id.* at 41, the ALJ's written decision neither mentions Plaintiff's OT visit with Ms. Youngblood nor acknowledges the plan of care. Plaintiff contends that the ALJ's failure to address the plan of care warrants remand for further fact finding without reaching the issue of whether the RFC is supported by substantial evidence. Pl.'s Br. 10-11 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947)).

9

Plaintiff maintains that Ms. Youngblood's plan of care should have been considered using the factors set forth in 20 C.F.R. § 416.927 and, without mention of the plan of care in the hearing decision, this Court cannot know the weight afforded the plan of care and for what reason. *See id.*

The ALJ did not err with respect to Ms. Youngblood's plan of care. As stated above, the ALJ was not required to mention the plan of care because, as an OT, Ms. Youngblood is not an acceptable medical source. That Dr. Golden co-signed the plan of care, however, does not affect its weight or the ALJ's obligation with respect to it. *See Ramirez v. Berryhill*, 2018 WL 3651389, at *4 n.3 (S.D. Tex. July 17, 2018) ("[T]o the Court's knowledge, there is no Fifth Circuit precedent providing that an ALJ must give greater credence to an 'other source's' opinion simply because it is co-signed by a physician."), *rec. adopted*, 2018 WL 3651345 (S.D. Tex. Aug. 1, 2018). Further, it is not accurate to characterize Ms. Youngblood's plan of care as a medical opinion. Rather, the plan of care comprises treatment notes and a single functional limitation reporting note, with a Medicare G-code (G8984), that Plaintiff is "impaired, limited, or restricted" in "carrying, moving, and handling objects . . . [a]t least 40 percent but less than 60 percent." A.R. 772. The Court disagrees that the functional limitation reporting note, included for Medicare billing purposes, represents a "'bottom line' conclusion" by a medical source that Plaintiff is more functionally limited than the ALJ's determination indicates. *See* Pl.'s Br. 6.

10

It appears to be Plaintiff's position that the ALJ's decision in this case is not reviewable because it lacks reference to Ms. Youngblood's plan of care. Plaintiff maintains that the "judiciary must review the ALJ's decision as written, cannot fill gaps with post hoc reasoning or judge the propriety of the decision's bottom line on grounds other than those set forth in the decision, and cannot rewrite or improve upon the ALJ's language when it is vague, unclear, or indecisive." *Id.* at 10-11 (citing *Chenery*, 332 U.S. at 196-97). According to Plaintiff, "[i]f the ALJ's decision fails to meaningfully address important subject-matter or if it does so in a 'vague' or 'confusing' way, then the proper course is to remand for clarification without reaching the question of whether substantial evidence supports denying the claim." *Id.* at 9 (citing *Copeland v. Colvin*, 771 F.3d 920, 927 n.5 (5th Cir. 2014); *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994)). Thus, Plaintiff argues, remand is required because the Court cannot know the ALJ's reasoning with respect to Ms. Youngblood's plan of care and consequently the ALJ's decision cannot be supported by substantial evidence. *Id.* at 11. Plaintiff's argument necessarily depends on the idea that the ALJ was required to consider the OT plan of care. The Court concludes that he was not.

Plaintiff also argues that certain defects in the medical opinion of Dr. Spoor, an SAMC, warranted giving greater weight to the functional limitation reporting note in Ms. Youngblood's plan of care. *Id.* at 17. First, Plaintiff maintains that "the opinion of a nonexamining doctor based on a document review cannot be 'substantial evidence' when the record that doctor reviewed was materially

11

incomplete," and the record that Dr. Spoor reviewed was incomplete because his review predated Plaintiff's OT visit and Ms. Youngblood's plan of care. *Id.* Plaintiff relies on *Alcantra v. Astrue*, 257 F. App'x 333 (1st Cir. 2007) (per curiam) and *McGowen v. Colvin*, 2016 WL 1029480 (D.N.H. Mar. 15, 2016) for this proposition. Neither case binds this Court. Plaintiff does not cite, and the Court cannot find, Fifth Circuit precedent supporting Plaintiff's position that the ALJ was not entitled to afford Dr. Spoor's opinion great weight in this case. Moreover, Plaintiff does not cite, and the Court cannot find, any law supporting Plaintiff's position that the ALJ was required to order more records or seek an updated medical opinion because Dr. Spoor's assessment predated Ms. Youngblood's plan of care. *See Bentley v. Colvin*, 2015 WL 5836251, at *12 (N.D. Tex. Mar. 5, 2015) ("Plaintiff fails to cite any law supporting his contention that the ALJ was required to order more records or seek an updated medical opinion because the latest RFC assessment predated some of the medical evidence in the record."), *rec. adopted as modified on other grounds*, 2015 WL 5836029 (N.D. Tex. Sept. 30, 2015).

Nor was the ALJ required to credit the functional limitation reporting note in Ms. Youngblood's plan of care over Dr. Spoor's opinion simply because Ms. Youngblood evaluated Plaintiff while Dr. Spoor evaluated only Plaintiff's records. As discussed above, the Court concludes that the ALJ was not required to credit or even mention Dr. Youngblood's plan of care. *See also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990) (rejecting argument that nonexamining physicians do not provide substantial evidence as a matter of law and finding that they can

12

provide substantial evidence if they are not the sole medical evidence presented and they do not contradict the findings of an examining *physician*).³

## II. The ALJ did not commit a *Ripley* error.

An SAMC named Dr. Spoor evaluated Plaintiff's records and in February 2016 opined, among other things, that Plaintiff is limited to occasional overhead reaching. A.R. 81-82. The ALJ afforded Dr. Spoor's opinion "considerable weight" overall, but "disagree[d] with his finding of occasional overhead reaching since the record is not clear as to such significant restrictions in reaching[.]" *Id.* at 18. Plaintiff argues that the ALJ committed an error under *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1985) by, despite Dr. Spoor's opinion and without the support of any other doctor's opinion, finding Plaintiff indeed can engage in overhead reaching "frequently." Pl.'s Br. 20-21.

The ALJ has the duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits, and if the ALJ does not satisfy this duty, the decision is not substantially justified. *Ripley* 67 F.3d at 557. This means that the ALJ should request a medical source statement describing the types of work that the applicant can perform, but the absence of such a statement does not itself render the record incomplete. *Id.* But, even if the ALJ does commit a *Ripley* error, a plaintiff is only entitled to remand if the plaintiff can show she was prejudiced. *Id.* Prejudice can be established by showing that additional evidence would have

---

³ As discussed more fully below in Section III, the ALJ's RFC determination is not based solely on Dr. Spoor's opinion and is supported by substantial evidence.

been produced if the ALJ had fully developed the record and that the additional evidence might have led to a different conclusion. *Id.* at 557 n.22.

Here, the Court declines to determine whether the ALJ committed a *Ripley* error. Even if the ALJ did commit a *Ripley* error, Plaintiff has not satisfied her burden on appeal to demonstrate prejudice. Regarding prejudice, Plaintiff argues that this purported *Ripley* error is "harmful because the only doctor's opinion on the subject of reaching (Dr. Spoor's) invalidates the ALJ's ultimate finding of non-disability." Pl.'s Br. 27. But, importantly, aside from suggesting that the ALJ could have invited a doctor to testify at the administrative hearing or asked another SAMC to update Dr. Spoor's findings, Plaintiff describes no additional *evidence* not already in the record that would have been produced if the ALJ had further developed the record nor explains how that additional evidence might have led to a different conclusion. *See Williams v. Berryhill*, 2019 WL 4393635, at *13 n.9 (N.D. Tex. Sept. 13, 2019) (finding no prejudice where claimant did not identify any additional evidence that would have been available had the ALJ further developed the record as the claimant suggested or describe how it might have led to a different decision); *Joyce Ellen A. v. Berryhill*, 2019 WL 462778, at *4 (N.D. Tex. Jan. 16, 2019) ("In this case, Plaintiff fails to establish prejudice [under *Ripley*] because she does not identify any additional evidence that would have been available as a result of a consultative examination."), *rec. adopted*, 2019 WL 459978 (N.D. Tex. Feb. 6, 2019); *McDaniel v. Astrue*, 2011 WL 6337790, at *5 (N.D. Tex. Dec. 19, 2011) (finding no prejudice where the record already contained

medical evidence of plaintiff's disabilities and plaintiff "failed to demonstrate that additional evidence or expert testimony would have led the ALJ to reach a different RFC determination").

Moreover, the absence of a medical source statement about a claimant's ability to work does not, by itself, make the record incomplete under *Ripley*. *Cornett v. Astrue*, 261 F. App'x 644, 649 (5th Cir. 2008) (per curiam); *Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (per curiam). Instead, the salient issue is whether substantial evidence exists in the record to support the ALJ's decision, which is possible even without such a medical opinion. *Gutierrez*, 2005 WL 1994289, at *7. For the reasons described below, the ALJ's RFC determination is supported by substantial evidence.

### III. The ALJ's RFC determination is supported by substantial evidence.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012)). "'[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.'" *Id.* (brackets in original) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (per curiam)). "If supported by substantial evidence, the Commissioner's findings are deemed conclusive, and the court must accept them." *Jones v. Astrue,* 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (citing *Richardson,* 402 U.S. at 390). Substantial evidence in this context "means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). It is "more than a mere scintilla and less than a preponderance." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

Here, substantial evidence supports Plaintiff's RFC. In making his RFC determination, the ALJ gave Dr. Spoor's opinion "considerable weight." Dr. Spoor found that Plaintiff can lift or carry 20 pounds occasionally and 10 pounds frequently, can stand or walk about six hours in an eight-hour workday, can sit about six hours in in eight-hour workday, is unlimited in her ability to push and/or pull, can frequently stoop, crouch, and crawl, can occasionally climb, can reach overhead occasionally, and is limited in her fine and gross manipulation. A.R. 81-82. Thus, the ALJ's RFC exactly mirrors Dr. Spoor's opinion in all respects except those dealing with manipulation and reaching. *See id.* at 15 (stating Plaintiff's RFC). But the ALJ did not base his RFC determination on Dr. Spoor's opinion alone. The ALJ also points to Plaintiff's own Adult Disability Report where Plaintiff reports that "sometimes [her] hands go numb as [she] raise[s her] arms," but acknowledges that, other than fixing her hair, she has no problem performing personal care tasks, driving a car, shopping for groceries, talking on the phone, cleaning and doing laundry, or serving as an usher at church. *Id.* at 16, 202-06. The ALJ noted that these activities require "quite a bit of extension of arms and gripping." *Id.* at 16 The ALJ also detailed many aspects of Plaintiff's own testimony from the administrative hearing in reaching the RFC, including Plaintiff's testimony regarding her recent OT visit to Parkland where Ms. Youngblood

16

recommended a conservative plan of care comprised of wrist braces and home exercises. *Id.* The Court also finds that Plaintiff's RFC reflects the "little weight" the ALJ accorded Dr. Wagle's opinion, which indicated no limitation in Plaintiff's ability to walk or sit. *Id.* at 338. The ALJ acknowledged this finding and incorporated it into the RFC by limiting Plaintiff to sitting and walking for six hours out of an eight-hour workday. *Id.* at 15. Accordingly, the Court concludes that Plaintiff's RFC is supported by substantial evidence.

## Recommendation

For the foregoing reasons, the hearing decision of the ALJ should be AFFIRMED in all respects.

**SIGNED** February 28, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

   The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).